UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRANK FARRELL,

    Plaintiff,

  v.

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF
OREGON, dba Tri-Met, a municipal
corporation,

    Defendant.
_____

Civil No. 04-296-HA

OPINION AND ORDER

Daniel J. Snyder
Sara Thistlethwaite
Law Offices of Daniel Snyder
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
  Attorneys for Plaintiff

Jana Toran
Keith M. Garza
TriMet
4012 S.E. 17th Avenue
Portland, Oregon 97202
  Attorneys for Defendant

HAGGERTY, Chief Judge:

Plaintiff brought this employment-related action against his current employer, Tri-County Metropolitan Transportation District of Oregon (TriMet or defendant), asserting the following claims: (1) interference and retaliation in violation of the Family and Medical Leave Act (FMLA) and the Oregon Family Leave Act (OFLA); (2) discrimination and failure to reasonably accommodate in violation of the Americans with Disabilities Act (ADA) and the analogous Oregon statute; and (3) age discrimination in violation of the Age Discrimination in Employment Act (ADEA) and Oregon law.

On January 28, 2005, defendant filed a Motion for Summary Judgment (Doc. #31) on all claims. In his response to defendant's motion, plaintiff withdrew his claims based on age discrimination. On February 18, 2005, plaintiff filed a Motion to Strike Defendant's Facts in Support of Motion for Summary Judgment (Doc. #50). The court heard oral arguments on May 9, 2005, and took these motions under advisement at that time.

## I. PROCEDURAL MATTERS

### A. Plaintiff's Motion to Strike

Plaintiff moves to strike several statements made in defendant's concise statement of facts because they were not supported by any evidence or exhibits submitted by defendant. Plaintiff also moves the court to strike unsupported statements in defendant's memorandum in support of its summary judgment motion. Finally, plaintiff moves the court to strike all statements cited by defendant to the depositions of plaintiff and three other deponents because defendant did not initially submit copies of the depositions to the court. The court has since received copies of the depositions.

In compliance with Federal Rule of Civil Procedure 56, the court construes the facts

in the light most favorable to plaintiff, the non-moving party, for the purposes of this summary judgment motion. To the extent the court relies on defendant's assertions of fact, the court has ensured that they are properly supported by the record. Therefore, plaintiff's motion to strike is denied as moot.

## B. Exhaustion

In its reply brief, defendant argues that plaintiff failed to exhaust administrative remedies for several of his FMLA interference claims. Plaintiff filed his BOLI complaint on September 29, 2003, generally alleging FMLA interference in the year 2003. On November 26, 2003, plaintiff's counsel requested a right to sue letter, which was issued on December 3, 2003. Defendant argues that the investigation was therefore closed on December 3, 2003, at the latest, and that only claims for absences prior to that date have been exhausted.

Because defendant raised the failure to exhaust argument for the first time in its reply brief, the court permitted plaintiff to submit a surreply addressing the exhaustion issue. In his surreply, plaintiff argues that claims based on the FMLA are not subject to an administrative exhaustion requirement because the Equal Employment Opportunity Commission (EEOC) does not have enforcement authority over the FMLA. *See Laws Enforced by the EEOC*, *available at* http://www.eeoc.gov/policy/laws.html (last visited May 26, 2005). The court agrees with plaintiff, and defendant has not shown that exhaustion of administrative remedies is a condition precedent to a FMLA action.

## II. FACTUAL BACKGROUND

Plaintiff is sixty-three years old and has been working as a bus driver for defendant since June 1996. Prior to working for defendant, plaintiff worked for approximately twenty-five years as a bus driver for different companies. Plaintiff is eligible for retirement in

approximately one-and-one-half years.

From 1996 to 2003, Kevin Finn (Finn) was plaintiff's supervisor. Starting in 2003, Evelyn Warren (Warren) became plaintiff's supervisor. Also beginning in 2003, Fred Hansen (Hansen), the CEO of TriMet, posted bulletins around the company stating that there was too much driver absenteeism and that TriMet was cracking down on excessive sick leave and FMLA usage among its employees.

Plaintiff's medical conditions

Since approximately 1996, plaintiff has suffered from Chronic Obstructive Pulmonary Disease (COPD), which he states is also referred to as asthma or emphysema. Because of this condition, on a regular day with little pollution in the air, plaintiff is able to stand for up to fifteen minutes and walk for up to seventy-five yards before he needs to rest. Defendant became aware that plaintiff has this condition in July 2003, when plaintiff informed station manager Shelly Lomax (Lomax) that he had asthma that caused him to experience trouble breathing when there was pollution in the air.

Since 2001, plaintiff has suffered from eczema, which is a group of skin conditions that is more refractory and chronic than an ordinary rash. Eczema affects plaintiff's abilities to sit, sleep, work, walk, and exercise in varying degrees depending on the amount of inflammation and infection that is present. Dermatologist Patricia L. Norris, M.D., treats plaintiff's eczema. Plaintiff states that he informed defendant of his eczema in 2001.

In 2001, plaintiff's internal medicine physician, Dr. Curtis Marr, began treating him for diabetes, which was first diagnosed during a TriMet medical check-up in 1996. Plaintiff's diabetes affects his ability to eat, maintain energy, heal from cuts and injuries, and use medications.

Since September 2003, plaintiff has suffered from Adjustment Disorder with Anxiety and Depressed Mood. Plaintiff asserts that his work at TriMet is the major contributing cause of this condition. Plaintiff's adjustment disorder affects his ability to sleep, work, socialize, and engage in recreation. Defendant learned that plaintiff suffers from this condition on September 16, 2003, when plaintiff filed a workers' compensation claim based on this condition.

TriMet's absenteeism policies

TriMet is party to a collective bargaining agreement with the Amalgamated Transit Union 757, which represents plaintiff and other operators. A Working and Wage Agreement (Agreement) was in effect from December 1, 1998, through November 30, 2003. Under the Agreement, defendant keeps track of employee absences, or "time loss." An employee who is absent more than five consecutive working days or on more than four separate occasions in any 180 consecutive calendar days is considered to be "under the letter."

The consequence of being "under the letter" is that the employee must provide TriMet with a doctor's certification before being allowed to return to work. Failure to provide a medical certification results in additional time loss. If an employee has 100 hours of time loss, the employee is notified of the excessive time loss, which triggers disciplinary actions that can lead to suspension and/or termination. If an absence falls under FMLA, OFLA, or is a short-term disability, it does not count as time loss for purposes of the employee's "under the letter" status.

When a TriMet employee calls in sick, it is recorded on a "TriMet Call-In Sick" slip, which indicates the date when the employee will return to work or, if that date is not known, indicates an "O" for "open." When an employee makes a request for FMLA leave,

defendant requires the employee to complete a FMLA request form, on which the employee has the option of indicating that the reason for his or her protected leave is due to a serious health condition. The TriMet Human Resources Manual defines a "serious health condition" as "a single period of recovery or incapacity for more than three days, a chronic illness, a terminal illness, or an illness or injury that requires multiple treatments, such as restorative surgeries following an accident, cancer treatments, physical therapy, or kidney dialysis." Pl.'s Ex. List, Ex. G. at 2.

Plaintiff's absences and FMLA leave

It appears to be undisputed that between September 1, 2002, and September 8, 2003, plaintiff requested medical leave under FMLA and OFLA twenty-five times. Defendant asserts that of those requests, twenty-three were granted. The disputed leave requests underlying this action began in 2003. For example, in June 2003, Warren denied plaintiff's request for FMLA leave due to his eczema because she did not consider itching a serious health condition or disability. Plaintiff had previously submitted medical certifications and taken leave for his eczema. After plaintiff explained his condition to Warren, defendant granted his request for FMLA leave for the June 2003 absences.

On September 4, 2003, plaintiff arrived at work and explained to Lomax that he would not be able to work that day because of pollutants in the air and problems with his new asthma medication. Plaintiff was then absent on September 4, 5, and 6, 2003. Plaintiff sought FMLA leave for these absences, and defendant requested that plaintiff obtain a medical certification. Plaintiff obtained a certification from Dr. Marr, which listed plaintiff's impairment as "dyspnea," rather than asthma. Therefore, defendant asked for clarification of plaintiff's medical condition before it would approve the absences as FMLA leave.

On September 17, 2003, Cynthia Kodachi (Kodachi), TriMet's Manager of Compensation and Benefits, met with plaintiff to clarify whether he had a serious health condition on September 4-6. Kodachi asked plaintiff to allow TriMet's physician consultant, Dr. James Harris, to contact Dr. Marr to clarify the diagnosis of "dyspnea," which Dr. Harris indicated was a symptom of a condition rather than a condition itself. Plaintiff was represented by union representative Alan Eisenberg (Eisenberg) at that meeting, and, based on Eisenberg's advise, plaintiff refused to allow Dr. Harris to seek that clarification. After this meeting, plaintiff received a letter from Kodachi, dated September 18, 2003, stating that plaintiff had until September 24, 2003, to reconsider permitting TriMet to obtain clarification from Dr. Marr. Plaintiff did not change his mind, and defendant denied his FMLA leave request for those days.

Plaintiff also applied for and was either initially denied or outright denied FMLA leave for: October 16-20, 2003; October 21, 2003; December 12, 2003; December 18, 2003 to January 3, 2004; and January 22-23, 2004. Plaintiff was placed "under the letter" for many of these absences; however, some of the absences were subsequently characterized as FMLA leave and, therefore, no longer affected his "under the letter" status.

Plaintiff was also absent on September 11-25, 2003, November 11-14, 2003, and January 9-14, 2004, for which he applied for workers' compensation leave based on mental health conditions he developed on the job. Plaintiff states that he was placed "under the letter" for these absences because defendant did not consider them to be FMLA leave. Plaintiff went on short-term disability for his mental condition and his COPD starting in February 2004 and continuing until September 6, 2004.[1]

---

[1] Because plaintiff has put forth several different dates, it is not clear to the court whether plaintiff's short-term disability leave actually began in January, February, or March 2004.

<u>Plaintiff's "under the letter" status</u>

On September 22, 2003, plaintiff was "under the letter" for absences on:  September 4-6, August 15-16, June 4-5, and May 15-16, 2003.

On October 31, 2003, plaintiff was" under the letter" for absences on:  October 16-21, September 11-25, September 4-6, and August 15-16, 2003.

On December 22, 2003, plaintiff was "under the letter" for absences on:  December 18-20, December 12, November 12-14, and October 21, 2003.

Plaintiff also received "early intervention letters" on August 12, 2003, and September 3, 2003, which stated that failure to work on a regular basis could lead to disciplinary action.

<u>Plaintiff's reasonable accommodation requests</u>

Plaintiff asserts that he is disabled under the ADA and that he is capable of doing the essential functions of his job with reasonable accommodations.  Plaintiff contends that he can be accommodated for his COPD/emphysema/asthma by allowing occasional absences from work when necessary and by providing him with filtered air in the workplace, which is available in air conditioned buses.  Plaintiff contends that he can be accommodated for his eczema by occasional absences from work, particularly when the medical condition interferes with his ability to sleep or when the outbreak is on his back, buttocks, and legs, which interferes with sitting.  Plaintiff contends that he can be accommodated for his diabetes by being able to take more breaks, to eat regularly, and to drink water as needed.  Plaintiff also contends that he may need to miss work as an accommodation for his adjustment disorder.

---

The court assumes it began in February 2004, as stated in plaintiff's Response to Defendant's Motion for Summary Judgment at 14.

Plaintiff argues that TriMet should have proactively addressed his disabilities and right to accommodation as early as 2001, when Lomax became aware of some of his medical conditions but failed to refer him to the human resources department to explore his status and rights under the ADA. Plaintiff first requested information about accommodations in September 2004, when he asked Warren, as well as another assistant station agent, for a form to request accommodation for disability. Neither individual provided such a form or addressed accommodations under the ADA. On December 16, 2004, after plaintiff was deposed in this lawsuit, defendant sent plaintiff a letter addressing his alleged disabilities and reasonable accommodation under the ADA for his diabetes, COPD/emphysema, eczema, and adjustment disorder. At the time they briefed this motion, it appeared that the parties were engaged in discussions regarding plaintiff's request for accommodation.

### III. STANDARDS

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations

omitted).  All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party.  *MetroPCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted).  Where different ultimate inferences may be drawn, summary judgment is inappropriate.  *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party does have some limits.  The non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient."  *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986).  Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## IV.  ANALYSIS

Plaintiff alleges that defendant interfered with his right to take leave under FMLA and OFLA, retaliated against him in violation of FMLA, and failed to reasonably accommodate his disabilities under the ADA and state law.

### A.  Interference in violation of FMLA and OFLA

Plaintiff's claims under FMLA and OFLA are subject to similar analysis; therefore, they will be discussed together.  *Price v. Multnomah County*, 132 F. Supp. 2d 1290, 1295 n.7 (D. Or. 2001) ("To the extent possible, OFLA is to be construed 'in a manner that is consistent with any similar provisions of [the FMLA].'" (citing O.R.S. 659.494(2)).

The FMLA entitles an eligible employee to take up to a total of twelve workweeks of unpaid leave during any twelve-month period for a serious health condition that makes the

employee unable to perform the functions of his or her position.  29 U.S.C. § 2612(a)(1).  It is unlawful for an employer to interfere with the exercise of an employee's right to take leave.  29 U.S.C. § 2615(a).  An employer interferes with an employee's rights under the FMLA if it refuses to authorize FMLA leave or discourages an employee from using such leave.  29 C.F.R. § 825.220.  Mischaracterizing FMLA leave as something else, such as personal leave, qualifies as an "interference."  *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1135 (9th Cir. 2003) (holding that a question of fact existed as to whether the employer violated the employee's FMLA rights by mischaracterizing her leave as personal leave); 29 C.F.R. § 825.220(a)(1), (b).

Plaintiff alleges that defendant violated his rights under FMLA by improperly denying him leave and by mischaracterizing his absences as non-FMLA leave.  Specifically, plaintiff alleges that he was improperly denied FMLA leave for the following absences:

> September 4-6, 2003
> September 11-25, 2003, November 11-14, 2003, and January 9-14, 2004
> (workers' compensation leave)
> October 16-20, 2003
> October 21, 2003
> December 12, 2003
> December 18, 2003 to January 3, 2004
> January 22-23, 2004
> February - September 2004 (short-term disability leave)

In order to establish a *prima facie* case for his FMLA interference claim, plaintiff must establish each of five elements:  (1) he is an eligible employee; (2) TriMet is an employer under the FMLA; (3) he was entitled to take leave; (4) he gave notice of his intention to take leave; and (5) defendant denied him the benefits to which he was entitled under the FMLA.  *Price,* 132 F. Supp. 2d at 1297.  Defendant does not dispute the first or second elements, nor does it dispute the fourth element for most absences at issue here.

Rather, defendant argues that plaintiff has failed to establish the third and fifth elements – that defendant denied him FMLA leave to which he was entitled.

"It is the employer's responsibility to determine when FMLA leave is appropriate, to inquire as to specific facts to make that determination, and to inform the employee of his or her entitlements." *Xin Liu,* 347 F.3d at 1134. However, "[a]n employee giving notice of the need for unpaid FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine that the leave qualifies under the Act. If the employee fails to explain the reasons, leave may be denied." 29 C.F.R. § 825.208(a)(1).

The employer may require the employee to obtain written certification by a medical provider of the medical condition. 29 U.S.C. § 2613(a). "A certification will be considered sufficient if it details several aspects of the health condition including, in relevant part, a statement of the medical necessity for the leave, the expected duration of leave, and a statement that the employee is unable to perform the functions of the employee's job." *Bailey v. Southwest Gas Co.*, 275 F.3d 1181, 1186 (9th Cir. 2002) (citing 29 U.S.C. § 2613(b)).

If an employee submits a completed certification signed by a health care provider, the employer may not request additional information from the health care provider. 29 C.F.R. § 825.307(a). "However, a health care provider representing the employer may contact the employee's health care provider, with the employee's permission, for purposes of clarification and authenticity of the medical certification." *Id.* If an employer has reason to doubt the validity of a medical certification, it may require the employee to obtain a second opinion at the employer's expense. *Id.* The employer may designate the health care provider to furnish the second opinion, so long as the health care provider is not employed

on a regular basis by the employer. *Id.* Pending receipt of the second opinion, the employee is provisionally entitled to the benefits of FMLA; if the certifications do not ultimately establish the employee's entitlement to FMLA leave, the absences should not be designated as FMLA leave. *Id.*

September 4-6, 2003

On September 8, 2003, plaintiff requested FMLA leave for absences incurred September 4-6, 2003, for "asthma, chronic bronchitis." Pl.'s Ex. List, Ex. L at 2. Because there was not a medical certification on file regarding plaintiff's asthma, defendant asked plaintiff to provide one from his treating physician. Plaintiff provided a medical certification from Dr. Marr, which stated that plaintiff had "chronic dyspnea/cough with exacerbations due to pollutants or colds and flus." *Id.* at 7. Three boxes were checked on the form, which plaintiff admitted in deposition he himself checked: "Absence Plus Treatment," "Chronic Conditions Requiring Treatments," and "Permanent/Long-Term Conditions Requiring Supervision." *Id.* at 5. Dr. Marr indicated that the condition had been chronic for two years, that plaintiff "may intermittently be unable to work for several days," and that plaintiff might have three to four periods of incapacitation per year. *Id.* at 6. Dr. Marr also stated that plaintiff was able to return to work with no restrictions on September 9, 2003. *Id.* at 7.

This certification did not mention asthma. Because defendant's doctor considered dyspnea to be a symptom rather than a condition, defendant informed plaintiff that additional information would be required before his absences would be approved as FMLA leave. At a meeting on September 17, 2003, defendant requested permission from plaintiff to have Dr. Harris speak with Dr. Marr, but plaintiff refused. Defendant contends that,

alternative, it suggested that plaintiff submit to a second opinion by another doctor. However, plaintiff asserts that defendant never provided him with that option. Defendant ultimately denied plaintiff's request to characterize the absences as FMLA leave.

Plaintiff argues that defendant's denial of FMLA leave for these dates was improper because (1) the medical certification was complete and valid and (2) defendant failed to request that plaintiff submit to a second opinion.

Defendant argues that it properly denied plaintiff's FMLA leave request because plaintiff failed to adequately explain his need for the absences such that defendant could determine whether they qualified under the FMLA. Defendant relies on *Bailey* to argue that plaintiff did not meet his obligations to provide defendant with sufficient information about his medical condition. In *Bailey*, the plaintiff submitted an incomplete medical certification and then refused to permit the manager of human resources to speak to her doctor to clarify her medical condition. 275 F.3d at 1184-85. The court held that it was not unlawful for the employer to require that the plaintiff explain her use of soporific medicine while at work and that the plaintiff's "refusal to provide additional information was not a protected activity." *Id.* at 1186.

The *Bailey* holding is not applicable to the situation here, however, because plaintiff did not refuse to permit his supervisors to contact Dr. Marr. In fact, plaintiff indicates that his objection was specific to Dr. Harris and that he would have permitted his supervisor to contact Dr. Marr, had defendant made such a request. In light of this, the court finds that there is a genuine issue of fact as to whether plaintiff met his obligation to provide defendant with sufficient information about his medical condition. The court also finds that there is a genuine issue of fact as to whether the initial certification plaintiff submitted for

the September 4-6, 2003, absences was valid and complete.

October 16-20, 2003

On October 16, 2003, plaintiff called in sick due to asthma and requested FMLA leave through October 20, 2003. Defendant requested a medical certification, which plaintiff provided on or about October 20, 2003. These absences were approved as FMLA leave on November 11, 2003. However, in the meantime, plaintiff was placed "under the letter" on October 31, 2003, based in part on these absences. When his leave was approved on November 11, those absences no longer affected his "under the letter" status. Plaintiff has raised a triable issue as to whether he was improperly placed under the letter, albeit for a short time, for theses absences.

October 21, 2003

Plaintiff was also absent on October 21, 2003, but his medical certification did not include that date. In fact, the certification stated that plaintiff was able to return to work with no restrictions on October 20, 2003. Therefore, defendant denied plaintiff's request to characterize that absence as FMLA leave. Plaintiff contends that defendant should have granted his request for FMLA leave for his absence on October 21 based on the certification on file for his absences on October 16-20 because defendant's own policy indicates that medical certifications are good for ninety days. The court finds that plaintiff has raised a genuine issue of fact as to whether he was wrongfully denied FMLA leave for this day.

September 11-25, 2003, November 11-14, 2003, and January 9-14, 2004

Plaintiff applied for on-the-job injury leave for September 11-25, 2003, November 11-14, 2003, and January 9-14, 2004, based on his adjustment disorder. Plaintiff argues that defendant wrongfully failed to characterize this as FMLA leave, which resulted in absences

that became part of his time loss record and affected his "under the letter" status. Defendant contends that plaintiff never requested FMLA leave for these days, but instead claimed the absences under Oregon's workers' compensation laws. Indeed, plaintiff filled out workers' compensation forms on September 15 and November 20, 2003, asserting that he was absent from work on September 11 and November 11-14, 2003, due to an on-the-job injury. Plaintiff has raised a triable issue as to whether he was also entitled to FMLA leave for these days.

December 12, 2003

Plaintiff asserts that he was absent due to his eczema on December 12, 2003, and that on December 13, 2003, he provided a medical certification from Dr. Norris for this date. Nonetheless, this absence was counted toward his "under the letter" status. Therefore, plaintiff has raised a triable issue as to whether this absence was inappropriately characterized as non-FMLA leave.

December 18, 2003-January 3, 2004

On December 17, 2003, plaintiff called in sick due to eczema. The Call-In Slip was marked "O" for open as to his return date. Plaintiff returned to work on January 6, 2004. On January 15, 2004, defendant notified plaintiff that he was required to provide a medical certification by January 30, 2004, in order for the absences to be approved as FMLA leave. Plaintiff had already provided a medical certification regarding eczema for his absence on December 12, 2003, which he understood was valid for ninety days. Therefore, he did not provide an additional medical certification, and on February 2, 2004, plaintiff's request to have these dates characterized as FMLA leave was denied. Plaintiff has raised a triable issue as to whether he was required to obtain another certification before the ninety-day

period had expired.

January 22-23, 2004

On January 21, 2004, plaintiff again called in sick due to eczema and again communicated that his absence was "open." Upon returning to work, plaintiff provided a medical certification through January 23, as well as a return to work release signed by Dr. Norris. Plaintiff then filled out a FMLA request form adding these dates as a continuation of his December 18, 2003 to January 3, 2004 absences. On January 28, 2004, Warren indicated that plaintiff was required to obtain an additional medical certification for these absences by February 12, 2004, in order for them to be characterized as FMLA leave. However, on February 6, 2004, before this deadline arrived, Warren denied plaintiff's request for FMLA leave for these days. There is a genuine issue of fact whether this was improper.

February to September 2004 (short-term disability)

On September 28, 2004, plaintiff received an "under the letter" notice based on his absences from February to September 4, 2004. Plaintiff has applied for short-term disability leave for these absences and argues that they should also qualify as FMLA leave because his adjustment disorder is a serious illness with chronic conditions that required treatment. The court finds that plaintiff has raised a triable issue of fact as to whether he was entitled to FMLA leave for those days.

In sum, plaintiff has raised a genuine issue of material fact that he was wrongfully denied leave under FMLA and OFLA. Therefore, defendant's summary judgment motion as against those claims is denied.

**B. Retaliation in violation of the FMLA**

In contrast to a claim of FMLA interference, a claim for retaliation under the FMLA requires the plaintiff to show that he or she was punished for *opposing* practices made unlawful by the FMLA. *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001). To establish a *prima facie* FMLA retaliation claim, the plaintiff must show that: (1) he or she availed herself of a protected right under FMLA; (2) he or she was adversely affected by an employment decision; and (3) there is a causal connection between the two actions. *Washington v. Fort James Operating Co.,* 110 F. Supp. 2d 1325, 1330 (D. Or. 2000) (citing *Morgan v. Hilti*, 108 F.3d 1319, 1325 (10th Cir. 1997)).

Plaintiff argues that he availed himself of a protected right when, in September 2003, he filed a BOLI complaint against defendant alleging FMLA interference. Plaintiff also argues that he was adversely affected as a result of this action because defendant began to overly scrutinize and inappropriately deny his leave requests, which, he contends, resulted in him being placed "under the letter," caused him to accrue additional time loss, and put his employment at risk. Plaintiff also asserts that he suffered on-the-job stress and harassment, which caused him to miss several days of work. The court finds that these facts are sufficient to establish a *prima facie* claim for retaliation in violation of FMLA. Therefore, defendant's summary judgment motion as against this claim is denied.

**C. Plaintiff's claims based on the ADA and O.R.S. 659A.100 *et seq*.**

The ADA prohibits an employer from discriminating against disabled individuals in job application procedures, hiring, advancement, discharge, compensation, training, and other aspects of employment. 42 U.S.C. § 12112(a). Plaintiff argues that defendant discriminated against him based on his disabilities and failed to provide him with reasonable

accommodations.

The standard for establishing a *prima facie* case under the ADA is similar to that for a claim under the analogous Oregon statute. *See Wheeler v. Marathon Printing, Inc.*, 974 P.2d 207, 213 n.6 (Or. App. 1998) (noting that the Oregon statutory scheme regarding workplace discrimination against disabled persons "contain[s] language significantly similar to the ADA"); *see also* O.R.S. 659A.139 ("ORS 659A.112 to 659A.139 shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as amended.").

To establish a *prima facie* case of discrimination under the ADA, plaintiff must show that he: (1) is disabled; (2) is qualified; and (3) suffered an adverse employment action because of his disability. *Allen v. Pacific Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003); *Snead v. Metro. Prop. & Cas. Ins. Co.,* 237 F.3d 1080, 1087 (9th Cir. 2001) (citation omitted).

Is plaintiff a qualified individual with a disability under the ADA?

A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Under 42 U.S.C. § 12102(2), a person is considered disabled if he or she: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 476-78 (1999); *see also* O.R.S. 659A.100(1).

"Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *see also* O.R.S. 659A.100(2)(a). "Substantially limits" refers to the

inability to perform a major life activity as compared to the average person in the general population or a significant restriction "as to the condition, manner or duration under which an individual can perform" the particular activity. 29 C.F.R. § 1630.2(j)(1)(i)-(ii); *see also Thompson v. Holy Family Hosp.*, 121 F.3d 537, 539-40 (9th Cir. 1997).

Three factors are to be considered in determining whether an individual is substantially limited in a major life activity: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long-term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

Here, the court must decide whether plaintiff has provided sufficient evidence to create a genuine issue of material fact that his COPD, eczema, diabetes, and adjustment disorder constitute disabilities that substantially affect one or more of his major life activities. To support his claim that he is substantially limited in daily activities, plaintiff states that due to his COPD he is unable to walk more than seventy-five yards or stand more than fifteen minutes at a time. Plaintiff also asserts that his asthma and emphysema prevent him from walking half a mile, performing housecleaning, or going outside on days when there is substantial pollution, and that his diabetes prevents him from walking, doing yard work, or fixing his car.

Plaintiff asserts that his eczema affects his ability to sit, sleep, work, walk and exercise. When it flares up, the itching wakes plaintiff during the night such that it is not safe for him to drive a bus in the morning. When asked how frequently the itching is a problem, plaintiff stated that "it comes and goes." Farrell Dep. at 60. "I've had it go away for as long as two weeks or come back everyday in some different area." *Id.* at 60-61.

Furthermore, plaintiff's personnel files and medical certifications submitted to defendant indicate that he suffered from diabetes, flu, back injuries, rash, dermatitis, eczema, and asthma.

Plaintiff also relies on Dr. Marr's evaluation of his limitations. In a letter dated January 26, 2004, Dr. Marr stated that plaintiff has chronic medical problems, including adult-onset diabetes, hypertension, arthritis, and chronic lung disease. Dr. Marr wrote:

> You have asthma, which has been exacerbated by chronic tobacco use, resulting in chronic bronchitis. Your exercise capacity is markedly limited due to your lung disease. On a normal day you are not breathless at rest or with doing your usual work activities, but you do become breathless with walking short distances. Your lung condition is worsened during times when you have viral respiratory illnesses and during times of exposure to environmental pollutants. Furthermore, adverse conditions such as snow and ice which make ambulation more difficult can result in worsening of your breathlessness. Your lung disease is certainly the primarily [sic] factor that limits your ability to engage in any sort of strenuous activity.
>
> Your multiple medical disabilities interfere with your life in general beyond bus driving. You can perform the duties of bus driving, but with the need to take intermittent leave or time off for any of these multiple medical problems, but especially your chronic lung disease.

Pl.'s Ex. List, Ex. R.

On December 17, 2004, in response to defendant's request for his opinion regarding whether plaintiff has a medical condition covered by the ADA, Dr. Marr stated that plaintiff is substantially limited in the major life activities of walking, breathing, performing manual tasks, caring for himself, lifting, sleeping, working, reproducing, and running. Pl.'s Ex. List, Ex. T. The court finds that this evidence is sufficient to raise a genuine issue of fact that plaintiff was substantially limited in one or more major life activities. Therefore, for purposes of this summary judgment motion, plaintiff has established that he is a qualified individual with a disability under the ADA.

<u>Did defendant fail to engage in the interactive process?</u>

Plaintiff argues that defendant failed to accommodate him when he applied for time off on September 4-6, 2003, October 16-20, 2003, October 21, 2003, December 18, 2003 to January 3, 2004, January 9-14, 2004, January 22-23, 2004, and when he returned from short-term disability leave in September 2004.

The ADA's definition of discrimination includes "not making reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). "Reasonable accommodation" means that, in certain instances, employers must make special adjustments to their policies for individuals with disabilities. 29 C.F.R. § 1630.2(o)(1)(ii) (reasonable accommodation includes "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the person held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position . . .").

An employer's obligation to engage in the interactive process with the employee to find a reasonable accommodation "is triggered by an employee or employee's representative giving notice of the employee's disability and the desire for accommodation." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) (en banc), *vacated on other grounds, U.S. Airways, Inc. v. Barnett,* 535 U.S. 391 (2002). "An employee is not required to use any particular language when requesting an accommodation but need only inform the employer of the need for an adjustment due to a medical condition." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (internal quotations and citation omitted). Once the

employee has provided notice to the employer of the request for an accommodation, the employer must communicate directly with the employee and explore in good faith the employee's request. *Id.* "Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown in the interactive process." *Id.* (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996)).

Defendant argues that, even assuming plaintiff is a qualified individual with a disability, defendant made reasonable accommodations by allowing him time off from work to undergo treatment. The Ninth Circuit has held that "where a leave of absence would reasonably accommodate an employee's disability and permit him, upon his return, to perform the essential functions of the job, that employee is otherwise qualified under the ADA." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135-36 (9th Cir. 2001) (citing *Nunes v. Wal-Mart Stores, Inc.,* 164 F.3d 1243, 1247 (9th Cir.1999)). Defendant asserts that twenty-three of plaintiff's twenty-five requests made prior to September 2003 for FMLA leave were granted and that plaintiff was permitted to take leave in September 2003 even though his FMLA leave request was denied.

However, as described above, there are instances where plaintiff's FMLA leave requests were denied. Therefore, plaintiff has raised a genuine issue of fact as to whether defendant failed to initiate the interactive process and failed to provide him with reasonable accommodations. Furthermore, the parties have indicated that they are engaged in ongoing discussions regarding whether plaintiff is entitled to reasonable accommodations. Therefore, the court denies defendant's summary judgment motion as to plaintiff's claims under the ADA and the analogous Oregon statute.

## V.  CONCLUSION

For the reasons stated above, defendant's Motion for Summary Judgment (Doc. #31)

is DENIED.  Plaintiff's Motion to Strike Defendant's Facts in Support of Motion for

Summary Judgment (Doc. #50) is DENIED as moot.

IT IS SO ORDERED.

Dated this __31__ day of May, 2005.


_/s/Ancer L.Haggerty_____

Ancer L. Haggerty
United States District Judge